Jonathan Evans (Cal. Bar #247376)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway
Suite 800
Oakland, CA 94612
Phone: 510-844-7100 x318
Fax: 510-844-7150
email: jevans@biologicaldiversity.org

Counsel for Plaintiffs Center for Biological Diversity,
Center for Environmental Health, and Neighbors for Clean Air

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, CENTER FOR ENVIRONMENTAL HEALTH, and NEIGHBORS FOR CLEAN AIR, <br><br> Plaintiffs, <br><br> v. <br><br> GINA McCARTHY, in her official capacity as Administrator of the United States Environmental Protection Agency, <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> (Clean Air Act, 42 U.S.C. §§ 7401 *et. seq.*) |

## I. INTRODUCTION

1. Plaintiffs the Center for Biological Diversity, the Center for Environmental Health, and Neighbors for Clean Air [collectively "Environmental Groups"] bring this Clean Air Act citizen suit to compel the United States Environmental Protection Agency to undertake overdue

Complaint

1 mandatory duties. Specifically, Defendant, Gina McCarthy, in her official capacity as

2 Administrator of the United States Environmental Protection Agency ("EPA"), has failed to

3 make findings of failure to submit under 42 U.S.C. § 7410(k)(1)(B), and publish notice of those

4 findings in the Federal Register, for nonattainment state implementation plans ("SIPs") for the

5 2006 particulate matter less than 2.5 microns in diameter ("PM2.5") for the following areas and

6 elements listed in Table 1:

**TABLE 1**

| AREA & ELEMENT(S) | STATE | SUBMITTAL DEADLINE |
|---|---|---|
| West Central Pinal, AZ – Nonattainment New Source Review element ("NNSR") | Arizona | 12/31/2014 |
| Imperial County – NNSR, Contingency Measures element, Attainment Demonstration element, Reasonably Available Control Measures/Reasonably Available Control Technology element ("RACM/RACT") Subpart 4, Reasonable Further Progress element ("RFP") | California | 12/31/2014 |
| Sacramento – El Dorado, Placer and Yolo-Solano - NNSR | California | 12/31/2014 |
| Klamath Falls – RACM/RACT Subpart 4 | Oregon | 12/31/2014 |
| Oakridge – RACM/RACT Subpart 4 | Oregon | 12/31/2014 |
| Provo – RACM/RACT Subpart 4 | Utah | 12/31/2014 |
| Salt Lake City – RACM/RACT Subpart 4 | Utah | 12/31/2014 |

Furthermore, EPA has failed to take final action, pursuant to 42 U.S.C. § 7410(k)(2) – (4), to approve or disapprove, in whole or part, the 2006 PM2.5 National Ambient Air Quality Standards ("NAAQS") nonattainment SIP submissions listed in Table 2 below:

COMPLAINT – 2

**TABLE 2**

| AREA | ELEMENT(S) | COMPLETION DATE | FINAL ACTION DUE DATE |
|---|---|---|---|
| Logan – ID/UT | Attainment Demonstration, Contingency Measures | 6/19/2013 | 6/19/2014 |
| Klamath Falls, OR | Attainment Demonstration, Contingency Measures, RACM/RACT Subpart 1, RFP | 6/17/2013 | 6/17/2014 |
| Oakridge, OR | Attainment Demonstration, Contingency Measures, RACM/RACT Subpart 1, RFP | 6/20/2013 | 6/20/2014 |
| Provo, UT | Attainment Demonstration, Contingency Measures, RACM/RACT Subpart 1, RFP | 6/16/2014 | 6/16/2015 |
| Salt Lake City, UT | Attainment Demonstration, Contingency Measures, RACM/RACT Subpart 1, RFP | 6/16/2014 | 6/16/2015 |
| Nogales, AZ | NNSR | 4/29/2013 | 4/29/2014 |
| Chico, CA | NNSR | 4/9/2013 | 4/9/2014 |
| Sacramento [Sacramento], CA | NNSR | 3/26/2013 | 4/26/2014 |
| San Francisco Bay Area, CA | NNSR | 6/26/2013 | 6/26/2014 |
| Logan, UT | NNSR | 2/23/2014 | 2/23/2015 |
| Provo, UT | NNSR | 2/23/2014 | 2/23/2015 |
| Salt Lake City, UT | NNSR | 2/23/2014 | 2/23/2015 |
| Logan, ID | RACM/RACT Subpart 1, RFP | 6/19/2013 | 6/19/2014 |
| Logan, UT | RACM/RACT Subpart 1, RFP | 6/17/2013 | 6/17/2014 |

COMPLAINT – 3

Accordingly, Plaintiffs THE CENTER FOR BIOLOGICAL DIVERSITY, THE CENTER FOR ENVIRONMENTAL HEALTH, and NEIGHBORS FOR CLEAN AIR bring this action against Defendant GINA McCARTHY, in her official capacity as EPA Administrator, to compel her to perform these mandatory duties.

## II. JURISDICTION

2. This case is a Clean Air Act citizen suit. Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a)(2) (citizen suits for failure to perform a non-discretionary duty required by the Clean Air Act).

3. An actual controversy exists between the parties. This case does not concern federal taxes, is not a proceeding under 11 U.S.C. §§ 505 or 1146, and does not involve the Tariff Act of 1930. Thus, this Court has authority to order the declaratory relief requested under 28 U.S.C. § 2201. If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

## III. NOTICE

4. On July 27, 2015, Plaintiffs mailed to EPA by certified mail, return receipt requested, written notice of intent to sue regarding some of the violations alleged in this Complaint. EPA received this notice of intent to sue letter no later than August 3, 2015. More than sixty days have passed since EPA received this "notice of intent to sue" letter. EPA has not remedied the violations alleged in this Complaint. Therefore, a present and actual controversy exists.

## IV. VENUE

5. Defendant EPA resides in this judicial district. EPA Region 9, which has authority over California and Arizona, is headquartered in San Francisco. This civil action is brought against

COMPLAINT – 4

an officer of the United States acting in her official capacity and a substantial part of the events or omissions giving rise to the claims in this case occurred in the Northern District of California. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## V.  INTRADISTRICT ASSIGNMENT

6.    A substantial part of the events and omissions giving rise to the claims in this case occurred in the County of San Francisco.  EPA Region 9, which has authority over California and Arizona, is headquartered in San Francisco.  Accordingly, assignment to the San Francisco Division or the Oakland Division is proper pursuant to Civil L.R. 3-2(c) and (d).

## VI.  PARTIES

7.    Plaintiff the CENTER FOR BIOLOGICAL DIVERSITY is a non-profit 501(c)(3) corporation incorporated in California.  The Center for Biological Diversity has over 50,000 members throughout the United States and the world.  The Center for Biological Diversity's mission is to ensure the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands and waters, and public health through science, policy, and environmental law.  Based on the understanding that the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked, the Center for Biological Diversity is working to secure a future for animals and plants hovering on the brink of extinction, for the ecosystems they need to survive, and for a healthy, livable future for all of us.

8.    The Center for Biological Diversity and its members include individuals with varying interests in wildlife species and their habitat ranging from scientific, professional, and educational to recreational, aesthetic, moral, and spiritual.  Further, the Center for Biological Diversity's members enjoy, on an ongoing basis, the biological, scientific, research, educational, conservation, recreational, and aesthetic values of the regions inhabited by these species,

1   including the regions at issue in this action.  The Center for Biological Diversity's members
2   observe and study native species and their habitat, and derive professional, scientific,
3   educational, recreational, aesthetic, inspirational, and other benefits from these activities and
4   have an interest in preserving the possibility of such activities in the future.  The Center for
5   Biological Diversity and its members have participated in efforts to protect and preserve natural
6   areas, including the habitat essential to the continued survival of native species, and to address
7   threats to the continued existence of these species, including the threats posed by air pollution
8   and other contaminants.
9   9. Plaintiff the CENTER FOR ENVIRONMENTAL HEALTH is an Oakland, California
10  based nonprofit organization that helps protect the public from toxic chemicals and promotes
11  business products and practices that are safe for public health and the environment. The Center
12  for Environmental Health works in pursuit of a world in which all people live, work, learn, and
13  play in healthy environments.
14  10. Plaintiff NEIGHBORS FOR CLEAN AIR is a Portland, Oregon based nonprofit
15  organization.  It works to create a healthier Oregon through a reduction in air pollution.
16  10. Plaintiff's members live, work, recreate, travel and engage in other activities throughout
17  the areas at issue in this complaint and will continue to do so on a regular basis.  Pollution in the
18  affected areas threatens and damages, and will continue to threaten and damage, the health and
19  welfare of Plaintiffs' members as well as their ability to engage in and enjoy their other
20  activities.  Pollution diminishes Plaintiff's members' ability to enjoy the aesthetic qualities and
21  recreational opportunities of the affected area.
22  11. EPA's failure to timely perform the mandatory duties described herein also adversely
23  affects Plaintiffs, as well as their members, by depriving them of procedural protection and

COMPLAINT – 6

28

1  opportunities, as well as information that they are entitled to under the Clean Air Act. The

2  failure of EPA to perform the mandatory duties also creates uncertainty for Plaintiffs' members

3  as to whether they are exposed to excess air pollution.

4  12.  The above injuries will continue until the Court grants the relief requested herein.

5  13.  Defendant GINA McCARTHY is the Administrator of the EPA. In that role

6  Administrator McCarthy has been charged by Congress with the duty to administer the Clean Air

7  Act, including the mandatory duties at issue in this case. Administrator McCarthy is also

8  charged with overseeing all EPA regional offices including EPA Region 9, which has authority

9  over California and is headquartered in San Francisco.

## VII. LEGAL BACKGROUND

14.  Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring that the air we breathe throughout the Nation is wholesome once again." H.R. Rep. No. 1146, 91st Cong., 2d Sess. 1,1, 1970 U.S. Code Cong. & Admin. News 5356, 5356. To promote this, the Act requires EPA to set National Ambient Air Quality Standards for certain pollutants. 42 U.S.C. § 7409(a). National Ambient Air Quality Standards establish maximum allowable concentrations in the air of such pollutants.

15.  After EPA promulgates a National Ambient Air Quality Standard, the Clean Air Act requires that EPA designate each area of the country as either a clean air area for that standard, which is known as "attainment" in Clean Air Act jargon, or a dirty air area, which is known as "nonattainment" in Clean Air Act jargon. *See* 42 U.S.C. § 7407(d).

16.  Under the Clean Air Act, each state is required to submit state implementation plans to ensure that each National Ambient Air Quality Standard will be achieved, maintained, and

COMPLAINT – 7

1  enforced. Without such plans, the public is not afforded full protection against the harmful

2  impacts of air pollution.

3  17.     For dirty air areas which EPA has designated as "nonattainment," states must submit

4  nonattainment area state implementation plans. *See* 42 U.S.C. §§ 7410(a)(2)(I), 7501 – 7509a,

5  7513 – 7513b.

6  18.     The Clean Air Act requires EPA to determine whether any state implementation plan

7  submittal is administratively complete. 42 U.S.C. § 7410(k)(1)(B). EPA must make this

8  determination by "no later than 6 months after the date, if any, by which a State is required to

9  submit the plan or revision." *Id.*

10  19.    If a state fails to submit any required state implementation plan, there is no submittal that

11  may be deemed administratively complete, and EPA must make a determination, and publish

12  notice of that determination in the Federal Register, stating that the state failed to submit an

13  administratively complete state implementation plan submittal within six months of when the

14  submittal was due. 42 U.S.C. § 7410(k)(1)(B). This is referred to as a "finding of failure to

15  submit."

16  20.    Once a state does submit a state implementation plan submittal, EPA has a mandatory

17  duty to take final action on any administratively complete state implementation plan submission

18  by approving in full, disapproving in full, or approving in part and disapproving in part within 12

19  months of the date the submission is deemed administratively complete. 42 U.S.C. § 7410(k)(2)

20  and (4).

21  ///

22  ///

23  ///

COMPLAINT – 8

28

## VIII. FACTS

21. This case involves EPA's failure to timely implement the National Ambient Air Quality Standards for PM2.5. There is no safe level of exposure to PM2.5, which includes hazardous forms of dirt, soot, smoke, and liquid droplets found in the air.

22. PM2.5 is "produced chiefly by combustion processes and by atmospheric reactions of various gaseous pollutants," thus "[s]ources of fine particles include . . . motor vehicles, power generation, combustion sources at industrial facilities, and residential fuel burning." 71 Fed. Reg. 61,144, 61,146 (Oct. 17, 2006).

23. The effects of PM2.5 on humans are profound. For example, exposure has been associated "with an array of health effects, notably premature mortality, increased respiratory symptoms and illnesses (*e.g.* bronchitis and cough in children), and reduced lung function." 62 Fed. Reg. 38,652, 38,668 (July 18, 1997).

24. PM2.5 also adversely impacts wildlife. EPA has explained "a number of animal toxicologic . . . studies had reported health effects associations with high concentrations of numerous fine particle components[.]" 71 Fed. Reg. 2,620, 2,643 – 2,644 (Jan. 17, 2006). PM2.5 also causes direct foliar injury to vegetation. *Id.* at 2,682.

25. As to broader ecosystem impacts, EPA has explained that the nitrogen and sulfur "containing components of PM have been associated with a broad spectrum of terrestrial and aquatic ecosystem impacts that result from either the nutrient or acidifying characteristics of the deposited compounds." *Id.* These impacts include nitrogen saturation which "causes 1) Decreased productivity, increased mortality, and/or shifts in terrestrial plant community composition, often leading to decreased biodiversity in many natural habitats wherever atmospheric [reactive nitrogen] deposition increases significantly and critical thresholds are

1    exceeded; (2) leaching of excess nitrate and associated base cations from terrestrial soils into streams, lakes and rivers and mobilization of soil aluminum; and (3) alteration of ecosystem processes such as nutrient and energy cycles through changes in the functioning and species composition of beneficial soil organisms (Galloway and Cowling 2002)." *Id.* EPA has described this impact on terrestrial ecosystems as "profound and adverse[.]" *Id.* EPA has also determined that PM2.5 adversely impacts aquatic ecosystems via excess nutrient inputs and acid and acidifying deposition. 71 Fed. Reg. at 2,682 – 2,683. "Data from existing deposition networks in the U.S. demonstrate that [nitrogen] and [sulfur] compounds are being deposited in amounts known to be sufficient to affect sensitive terrestrial and aquatic ecosystems over time." 71 Fed. Reg. at 2,683.

26.    Moreover, PM2.5 adversely affects the visibility and aesthetics of our natural surroundings. For example, regional haze is caused in part by particulates in the air scattering sunlight. 71 Fed. Reg. at 2,675 – 2,678. It is vital that EPA take the required action in order to strengthen protection of public health and welfare against PM2.5.

27.    In 2006, EPA strengthened the primary and secondary 24-hour PM2.5 NAAQS from 65 micrograms per cubic meter (ug/m$^3$) to 35 ug/m$^3$. The revised 24-hour PM2.5 standards were published on October 17, 2006 (71 Fed. Reg. 61,144) and became effective on December 18, 2006. EPA made attainment and nonattainment designations for the 2006 PM2.5 NAAQS which became effective on December 14, 2009. *See* 74 Fed. Reg. 58,688 (Nov. 13, 2009).

28.    EPA designated all of the areas listed in Tables 1 and 2 nonattainment for the 2006 PM2.5 NAAQS. 74 Fed. Reg. at 58,696. All elements of the nonattainment SIP were due by no later than December 31, 2014. *See* http://www.epa.gov/air/urbanair/sipstatus/reports/pm-

COMPLAINT – 10

2.5__2006_en.html. *See also* 79 Fed. Reg. 31,566 (June 2, 2014). Thus, EPA has a mandatory duty to make a completeness finding under 42 U.S.C. § 7410(k)(1)(B) by no later than July 1, 2015.

### IX. CLAIM FOR RELIEF

#### CLAIM ONE

(Failure to Make Findings of Failure to Submit.)

29. Plaintiffs incorporate by reference paragraphs 1 through 29.

30. The deadline for the 2006 PM2.5 National Ambient Air Quality Standard nonattainment state implementation plan submissions is no later than December 31, 2014. *See* http://www.epa.gov/air/urbanair/sipstatus/reports/pm-2.5__2006_en.html. *See also* 79 Fed. Reg. 31,566 (June 2, 2014).

31. More than six months have passed since December 31, 2014.

32. For each of the areas and nonattainment SIP elements listed in Table 1 of paragraph 1 above, the relevant state has failed to submit the listed nonattainment SIP element.

33. Pursuant to 42 U.S.C. 7410(k)(1)(B), EPA has a mandatory duty to make a finding of failure to submit by no later than July 1, 2015 for each area's nonattainment SIP elements listed in Table 1 of paragraph 1 above.

34. EPA has failed to make such findings.

#### CLAIM TWO

(Failure to Take Final Action on State Implementation Plan Submissions.)

35. Plaintiffs incorporate by reference paragraphs 1 through 34.

36. The Clean Air Act requires EPA to determine whether any state implementation plan submission is administratively complete. 42 U.S.C. 7410(k)(1)(B).

1  37. If, six months after a state submits a state implementation plan, EPA has not made the
2  completeness finding and has not found the submission to be incomplete, the submission is
3  deemed administratively complete by operation of law. *Id*.
4  38. EPA must take final action on an administratively complete submission by approving in
5  full, disapproving in full, or approving in part and disapproving in part within 12 months of the
6  date of the submission's administrative completeness finding. 42 U.S.C. § 7410(k)(2) - (4).
7  39. Each area's nonattainment SIP elements listed in Table 2 of paragraph 1 above was
8  deemed administratively complete, either EPA or operation of law, by the dated listed in Table 2
9  of paragraph 1.
10 40. EPA has a mandatory duty to take final action, and publish notice of that action in the
11 Federal Register, by approving in full, disapproving in full, or approving in part and
12 disapproving in each area's nonattainment SIP elements listed in Table 2 of paragraph 1 above
13 by no later than one year after the nonattainment SIP element was deemed administratively
14 complete. 42 U.S.C. § 7410(k)(2) and (4).
15 41. However, EPA has failed to approve in full, disapprove in full, or approve in part and
16 disapprove in part each area's nonattainment SIP elements listed in Table 2 of paragraph 1 above
17 by no later than one year after the nonattainment SIP element was deemed administratively
18 complete.
19 ///
20 ///
21 ///
22
23

COMPLAINT – 12

28

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Declare that the Administrator is in violation of the Clean Air Act with regard to her failure to perform the mandatory duties listed above;

B. Issue a mandatory injunction requiring the Administrator to perform her mandatory duties listed above by certain dates;

C. Retain jurisdiction of this matter for purposes of enforcing the Court's order;

D. Grant Plaintiffs their reasonable costs of litigation, including attorneys' and experts' fees; and;

E. Grant such further relief as the Court deems just and proper.

Respectfully submitted,

/s/Jonathan Evans
Jonathan Evans (Cal. Bar #247376)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway
Suite 800
Oakland, CA 94612
Phone: 510-844-7100 x318
Fax: 510-844-7150
email: jevans@biologicaldiversity.org

Counsel for Plaintiffs

Dated: October 8, 2015

COMPLAINT – 13